Appellant John Gallion appeals from the conviction of murder by the Circuit Court of the First Judicial District of Hinds County in the slaying of one Calvin Gray on February 24, 1980, wherein he was sentenced to life imprisonment. We affirm.
The weight and sufficiency of the evidence to justify the verdict of guilty is not questioned.
The first assignment of error is the court's excusing for cause a black juror on the ground he was a common gambler. The district attorney requested the court to excuse this juror, who it developed ran a *Page 622 
domino parlor and had been convicted once for the offense of gambling. This error, if we conceded error had been made by the circuit judge, was harmless. Neither the state nor the defendant exercised 12 peremptory challenges to which each side was entitled, each side exercising 11. This contention was answered long ago by this Court in Shubert v. State, 66 Miss. 446, 6 So. 238 (1889). In that case a special venire of 30 prospective jurors were drawn, and through inadvertence of the court one of the persons whose name was selected was left off the copy of the jury list given the accused. The defendant's motion to quash the panel was overruled. At the trial the jury was selected from the remaining 29, and without the accused exhausting the peremptory challenges authorized him by law. The defendant complained on appeal, and this Court made the following response:
 "It is a mistake to suppose that the prisoner has a vested right to a particular person of the special venire. The statutes providing for a special venire and giving the prisoner a copy of the indictment and list of the special venire summoned, are designed to secure an impartial jury to try him; and where that is accomplished no ground for complaint exists."
Appellant next complains the court erred in allowing the state to call three witnesses whose names were not disclosed prior to trial that day. However, the court did call a recess and gave counsel for the defendant an opportunity to interview these three witnesses before they testified. Counsel cites no authority, or shows in any manner how his client was prejudiced by any alleged discovery violation, and we hold no reversible error was committed in this respect.
This Court is constrained to make observation, however, upon what transpired in this matter. Rule 4.06 of the Uniform Criminal Rules provides that the prosecution shall upon request disclose to the defendant or his attorney and without further court order the names and addresses of all witnesses in chief proposed to be offered at trial. The same rule also provides that if the defendant requests discovery he shall disclose to the prosecutor the names and addresses of all witnesses in chief proposed to be offered by the defendant, to be disclosed simultaneously with receipt of the names and addresses of the state's witnesses. The rule also requires continuing disclosure for after-acquired information. There is, finally, a provision for sanctions against the attorney who wilfully violates the provisions of this rule.
Trial in this cause commenced on Monday morning, May 5, 1980. Apparently, while the court was in the process of selection of the jury, there was an off the record discussion, following which defense counsel objected to the state calling any more witnesses, ". . . because we worked all weekend trying to find the ones that they had already given us and they come up here after the jury has been selected and bring additional witnesses in contemplation of the rules on discovery."
The court then inquired of the state, and the state responded Robert (Slim) Sanders, had just been located, and the investigators were talking to Ann Turner and Henry Wilson. Also, that one Willie B. Smith had just been located that morning. Defense counsel made no further issue of the matter at that time, did not ask for a recess or time within which to talk to these witnesses, and the proceedings continued upon an unrelated matter.
Two witnesses testified for the state, were cross-examined by the defense, following which another conference was had at the bench between counsel and the court, but the record is silent on what was said in this conference. Again, apparently the state was about to offer Robert Sanders as a witness. The court excused the jury and informed defense counsel it was the court's understanding Sanders was one of the witnesses the state just discovered and, "I believe *Page 623 
you wanted time to interview him before he takes the stand."
The state then called to the attention of the court the defense had not furnished the state with the name of any witness they intended to call pursuant to the rules. The court then stated a recess would be taken until "you have a chance to interview all the witnesses."
Defense counsel responded they might not call any witnesses. The state then requested that the defense make a record of it. Defense counsel then stated: "We refuse to give a list to the state." The district attorney replied: "And we refuse to let him talk to our witnesses." Whereupon the following colloquy transpired: (Record 56, et seq.)
BY THE COURT; Go ahead and interview them so we can proceed.
BY MR. PETERS: Wait a minute, Your Honor.
BY THE COURT: Yes, sir.
BY MR. PETERS: I am going to direct these witnesses not to talk to this man unless they let us do it. That's the rule, Your Honor. There is no need for us to go by the rule if they don't follow the rule.
BY THE COURT: He stated that he didn't intend to call anyone at the present time. When he calls a witness, you will have a chance to interview him prior to taking the stand, Mr. Peters.
BY MR. PETERS: You don't have to talk to him.
BY MR. STANFIELD: Your Honor, we ask the Court to direct this witness as well as the others to talk with us and tell us what they know about the case.
BY THE COURT: I don't believe I have that authority, Mr. Stanfield. All I can do is give you the opportunity to interview him. I am telling the District Attorney not to instruct him not to talk to you though.
BY MR. PETERS: (Talking to witness) I am not instructing you not to talk to him but you don't have to talk to him if you don't want to.
BY MR. STANFIELD: Come on in here, man, and let me talk to you.
BY MR. PETERS: You don't have to talk to him if you don't want to.
BY MR. STANFIELD: Come on in here, man.
BY MR. PETERS: (Talking to the witness which could not be heard by this court reporter).
BY MR. STANFIELD: Your Honor, the District Attorney has advised him to refuse to talk to me and he's supposed to be the Court's witness and not the District Attorney's witness, Your Honor.
BY THE COURT: That's right.
BY MR. STANFIELD: And he refuses to talk to me, Your Honor.
BY MR. PETERS: Now, may it please the Court, that's a lie. I told the man that he did not have to talk to him unless he wanted to and he said that he did not want to talk to him and that he would tell everybody in court what he had to say.
BY THE COURT: What's your name?
BY THE WITNESS: Robert Sanders and I said whatever I had to say I would say before the Court.
BY THE COURT: Well, this man needs a chance to interview you before you take the stand so just step right in here and talk to him at the present time. It's going to work that way with you too, Mr. Stanfield, when and if you call your witnesses.
BY MR. STANFIELD: Come on in here, man, and talk to me.
BY MR. PETERS: Your Honor, could we be present during the questioning of this man? *Page 624 
BY THE COURT: Yes, sir.
(Off the record)
BY THE COURT: Are you ready to proceed?
BY MR. STANFIELD: Your Honor, we have not been able to interview the witness. He refuses to talk with us and refuses to talk with us without his lawyer being present and we are not going to talk to him under those circumstances.
BY THE COURT: All right. Do you want to talk to any of the others?
BY MR. STANFIELD: If we can talk to them like we usually talk to witnesses, yes, sir.
BY THE COURT: Well, I don't know of any other way to proceed, Mr. Stanfield, so I am ready to proceed if you are.
BY MR. STANFIELD: Well, I am not ready to proceed, Your Honor, because I can't talk to the witnesses but I'll have to be guided by the Court's directions.
BY THE COURT: Okay.
BY MR. STANFIELD: We have been denied the right to interview the witnesses who are to testify in this case.
BY THE COURT: I think a correct statement is that you have been denied the right to interview the witnesses outside the presence of the District Attorney.
BY MR. STANFIELD: But, Your Honor, had I known about it, I would have been entitled to interrogate these witnesses at any time.
BY THE COURT: That's right.
BY MR. PETERS: They have a right to announce who they wanted present and refuse to talk to them also, Your Honor, which this witness has done. He has told me that he wants me present if he talks to him and he has told me that he would tell whatever he had to say in open court, Your Honor.
BY MR. STANFIELD: Is that going to be true with all the other witnesses?
BY MR. PETERS: I don't know. I haven't talked to any.
BY MR. STANFIELD: Well, there is no need in taking up the Court's time. Mr. Davis can step down there and ask them if they are going to talk to us and, if they are not going to talk with us except with their lawyer being present, then we are not going to talk to them.
BY THE COURT: I think you have made your record, Mr. Stanfield. Now, are you ready to proceed?
BY MR. STANFIELD: Subject to the Court's ruling, yes, sir.
BY THE COURT: Okay. Bring the jury in.
The trial court was correct in informing defense counsel the court had no authority to require any witness to be interviewed privately prior to taking the witness stand. Scott v. State,359 So.2d 1355 (1958), pp. 1358-1360.
Defense counsel violated Rule 4.06 in failing and in fact refusing to give the names of prospective defense witnesses after requesting the names from the prosecution. The state was under a continuing duty to furnish the names and addresses of prosecution witnesses, which it failed to do. Further, while a witness has a right not to talk in a private interview even though under a subpoena, it was beyond the prerogative of the state's counsel to interfere with the attempted interview by defense counsel with eyewitnesses, and a clear violation of the same Rule, which provides:
 ". . . neither counsel for the parties nor other prosecution or defense personnel shall advise persons having relevant material or information . . . to refrain from discussing the case with opposing counsel or showing opposing counsel any relevant material, nor shall they otherwise impede opposing counsel's investigation of the case."
Both counsel, especially the state's, were subject to reprimand and possibly contempt in the presence of the court. As officers of the court, the conduct of both left much to be desired, was offensively discourteous, and we express our disapproval thereof. Each should have sought sanctions by the *Page 625 
court upon the other's failure to abide by the rule; they "took the rule into their own hands."
Yet, the handling of conduct such as revealed by this record rests, after all, with the trial court in whose presence it all took place. He has full authority to deal effectively with such conduct. No reversible error is shown to have resulted, and we accordingly affirm.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.