# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00981-SCT

*RELIOUS DENSMORE*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2008 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: HUNTER NOLAN AIKENS |
| | LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., DICKINSON AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Following a jury trial, Relious Densmore was found guilty of one count of sale of cocaine and was sentenced to serve thirty years as an habitual offender pursuant to Mississippi Code Section 99-19-81 (Rev. 2007). Finding that the State fell short of its duty to disclose evidence, we reverse the conviction and remand for a new trial.

## Facts

¶2. The State's main witness was Cecil Spraggins, who worked as a confidential informant for the Meridian Police Department and the Lauderdale County Sheriff's Department (East Mississippi Drug Task Force). On August 15, 2007, Spraggins agreed to try to purchase drugs from a certain woman, under the supervision of four task force agents. According to the agents' testimony, Spraggins was given seventy dollars to buy drugs from the woman. The agents searched Spraggins and his vehicle before he attempted the undercover buy, and they concealed audio and video surveillance equipment on his person.

¶3. With the investigating agents following, Spraggins drove to the suspect's home. Spraggins testified that, upon entering the residence, he was greeted by a white male and was told that the female suspect was in the shower. Spraggins also testified that a black male, later identified as Densmore, came from the back of the home. According to Spraggins, Spraggins asked Densmore, whether he, Densmore, had the "sixty." Densmore responded, "[y]es, sir, I do." Spraggins testified that he bought sixty dollars' worth of cocaine from Densmore and exited the home with this contraband.

¶4. Spraggins drove back to the task force headquarters to hand over the cocaine he had purchased. Once again, the agents searched his person and vehicle. A field test indicated that the purchased substance was cocaine. Later testing at the Mississippi Crime Laboratory revealed that the substance contained 0.7 grams of cocaine base.

¶5. Upon viewing the video recording, the agents discovered that no sound had been recorded during the transaction. The agents, however, had been able to maintain contemporaneous audio surveillance in their cars during the drug buy. Although the

2

recording was inaudible, the video images were clear, and the agents recognized Densmore as the black male who had made the sale. The agents then showed Spraggins a photographic lineup, and Spraggins identified Densmore's photograph as that of the person who had sold him the cocaine. While the video showed Densmore pulling the substance out of his pocket, it did not show a money-drug transfer. Because the surveillance equipment was attached to Spraggins's person, he is not shown in the video.

¶6.    On January 4, 2008, Densmore entered a plea of not guilty. Although the record does not indicate whether there was a written discovery request, on January 9, 2008, the defense received discovery information and material from the State. Trial was set for February 4, 2008, but a continuance was granted, and the trial was reset for March 19, 2008. It is not clear from the record who, if anyone, moved to continue the trial.

¶7.    The morning of trial, Densmore announced that he would not accept the State's plea bargain offers and instead would go to trial. That day, prior to commencement of the trial, the State informed the defense of the confidential informant's identity and the existence of a taped confession, neither of which had been included in the discovery material. According to the prosecutor, the State withheld Spraggins's identity until the morning of trial because it was his office's "policy not to reveal the name of the confidential informant until plea negotiations were concluded and it was certain the case was going to trial."

¶8.    During the pretrial motion hearing on the day of trial, Densmore moved for a continuance in order to obtain private counsel in place of his court-appointed attorney. In

3

the alternative, he requested that a continuance be granted in light of the newly-disclosed identity of the confidential informant, Spraggins, and the taped confession.

¶9. The trial judge ruled that the taped confession could not be used as evidence in Densmore's trial. He also granted a brief continuance, lasting approximately three and a half hours, to allow the defense an opportunity to view the taped confession and to obtain information about Spraggins from the National Crime Information Center (NCIC).[1] After seeing and hearing the confession tape, the defense filed a written motion for a continuance based on the newly-revealed evidence, but the trial judge overruled the motion as "not meritorious."

### Discussion

¶10. Densmore contends that the eleventh-hour disclosure of the State's confidential informant was manifestly unjust and prejudicial, and that the trial court erred in refusing to grant his motion for a continuance.

¶11. "The purpose of pre-trial discovery is to avoid ambush or unfair surprise to either party at trial." **Blanton v. State**, 727 So. 2d 748, 752 (Miss. 1999) (citing **Frierson v. State**, 606 So. 2d 604, 607 (Miss.1992)). Rule 9.04(A)(1) of the Uniform Circuit and County Court Rules provides that the prosecution shall disclose the names and addresses of all witnesses in chief, proposed to be offered by the prosecution at trial. Miss. Unif. Cir. & Cty. R. 9.04(A)(1). Rule 9.04(B)(2) provides that the "the informant's identity must be disclosed if

---

[1] The NCIC is a criminal records database available to law enforcement and prosecutorial authorities, but not to the public.

4

a failure to disclose would infringe upon the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant." Miss. Unif. Cir. & Cty. R. 9.04(B)(2).

¶12.   In the case at bar, Spraggins was the State's main witness and the only eyewitness to the events giving rise to the charge against Densmore. In accordance with Rules 9.04(A)(1) and 9.04(B)(2), the prosecution was required to disclose Spraggins's name and address to Densmore prior to the day of trial.[2]

¶13.   In *Box v. State*, 437 So. 2d 19 (Miss. 1983), the defendant was charged with armed robbery, and the State did not disclose the identity of the owner of the automobile allegedly used to perpetrate the robbery, a crucial witness, until the evening before the trial began. *Id.* at 20. This material witness was allowed to testify at trial, over the defense's timely objection, depriving the defense of adequate time to prepare for trial. *Id.* at 21. This Court held that reversal was required, reasoning that justice is better served when the accused knows "reasonably well in advance of trial what the prosecution will try to prove and how

---

[2]According to the prosecutor, the State withheld Spraggins's identity until the morning of trial because "it was a policy of our office not to reveal the name of a confidential informant until plea negotiations were concluded and it was certain the case was going to trial." Rule 9.04(B) provides in pertinent part that the "court may limit or deny disclosure authorized by subsection 'A' if it finds that there is substantial risk to any person of physical harm, intimidation, bribery . . . etc." Miss. Unif. Cir. & Cty. R. 9.04(B). However, the State did not make any argument in reliance on this provision, and the trial court made no such finding. The language in Rule 9.04(B) does not mention plea negotiations as a limitation to the required disclosure of the names and addresses of witnesses whom the State expects to call at trial.

5

it will attempt to make its proof which, of course, includes the names of persons the State expects to call as witnesses." *Id.*

¶14. Similar to *Box*, the State in the present case did not divulge the identity of the confidential informant, Spraggins, until the day of trial. Although the defense timely asked for a continuance, the trial proceeded in short order, and Spraggins was allowed to testify. The criminal discovery rules of this state were not enforced, and as the *Box* opinion recognized, "[a] rule which is not enforced is no rule." *Box*, 437 So. 2d at 21.

¶15. We recently reaffirmed our adherence to the rule announced in *Box*. In *Fulks v. State*, __ So. 3d __, 2009 WL 2183064 (Miss. July 23, 2009), a unanimous decision, this Court reversed a conviction of armed robbery where the State waited until the day before trial to inform the defense that a key witness had changed his story to implicate the defendant. The Court reiterated the reasons behind the need for a continuance in light of last-minute disclosures of material evidence:

> When a prosecutor reveals evidence on the eve of trial that should have been disclosed earlier, and when that evidence completely undercuts the defense's theory of the case and renders most of its trial preparations worthless, then the only effective remedy is a continuance. Otherwise, the defense attorney is left with inadequate time and opportunity to investigate the newly arisen evidence, evaluate its trustworthiness, discuss its implications with his client, allow time for due consideration thereof, and, if necessary, to develop a new trial strategy.

*Id.* at ¶ 10.

¶16. In some cases, a *Box* violation may require only a brief continuance. *Id.* at n. 3. (citing *Reuben v. State*, 571 So. 2d 1383, 1386 (Miss. 1986)). In the case *sub judice*, the trial judge did grant a brief recess to allow Densmore to examine information about Spraggins

6

from the NCIC report. However, "merely giving defense counsel a recess within which he may interview the newly-found witness or examine the newly-discovered document *is not sufficient* to prevent prejudice to the defendant." **Box**, 437 So. 2d at 24 (Robertson, J., concurring) (emphasis in original). As Justice Robertson explained in his concurring opinion, "there may be a dozen other ways to impeach or discredit the witness, if counsel only had time to develop and pursue his leads." **Id.** In this case, Densmore's attorney should have been granted time to pursue all avenues of impeachment, not just the NCIC report.[3]

¶17.    Finally, the State argues that Densmore has failed to preserve the denial of a continuance for appellate review because he did not reassert the issue in his motion for a new trial. Generally, the failure to grant a continuance must be included in a motion for a new

---

[3]The dissent argues that Densmore was not prejudiced because he was aware of the existence of a confidential informant and should have known the substance of this witness's testimony based on the previously-disclosed videotape recording of the transaction. Yet, Densmore could not have predicted what Spraggins might say when the bulk of Spraggins's testimony concerned events before and after the recording. This argument also ignores the defendant's need to gather impeachment evidence, which may not be related to the subject matter of the witness's testimony.

   The dissent would also place the burden to seek discovery upon the defendant once it has been volunteered by the State. This rationale was explicitly rejected in **Moore v. State**, 536 So. 2d 909, 911 (Miss. 1988), because it "would allow the prosecutor to volunteer discovery to defense counsel before defense counsel has filed a written request for discovery, and then withhold information that otherwise the state would be obligated to furnish under Rule [9.04]. To countenance this result would be to countenance obvious circumvention of Rule [9.04]."

   With respect to the dissent's assertion that **Foster v. State**, 484 So. 2d 1009 (Miss. 1986) "signal[ed] the Court's willingness to accept a short continuance where the identity of a CI was involved," the opinion makes no such implication. **Foster** simply noted, without specific examples, that a short continuance may be acceptable under certain circumstances. **Id.** at 1011.

trial to preserve the issue for appellate review. *Shelton v. State*, 853 So. 2d 1171, 1182 (Miss. 2003) (citing *Crawford v. State*, 787 So. 2d 1236, 1242 (Miss. 2001)). However, in examining the reasoning behind the rule, we conclude that in cases where the motion for a continuance is based upon a last-minute disclosure of a key piece of evidence, the defendant is not required to reassert the error in a motion for new trial.

¶18. The purpose of the rule is (1) to "assure an adequate record for considering the issue" and (2) "to give the trial judge, who is so much closer to the scene than we, every opportunity to act prior to the expensive and time-consuming process of appellate review." *Gowdy v. State*, 592 So. 2d 29, 33 (Miss. 1991). *See also Colson v. Sims*, 220 So. 2d 345, 347 n.1 (Miss. 1969). Such reasoning makes sense in light of the statute which governed continuances prior to the adoption of Mississippi's Uniform Rules of Circuit and County Court Practice, as that statute only contemplated continuances because of an absent witness or a missing document. Miss. Code Ann. § 99-15-29 (Rev. 2007). In such instances, the trial judge could not properly pass on the issue without receiving evidence of the witness's testimony or the contents of the documents, and a post-trial motion was necessary to ensure an adequate record. *See King v. State*, 251 Miss. 161, 171-172, 168 So. 2d 637, 641 (1964); *Lamar v. State*, 63 Miss. 265 (1885).

¶19. Yet, in cases involving last-minute disclosure of witnesses, a post-trial motion does nothing to further these goals, because the trial judge has already ruled on the issue, and the error is clear from the record. As this Court has clearly recognized, "it is not necessary to make a motion for a new trial grounded upon errors shown in the official transcript of the

8

record, including the pleadings, transcribed evidence, instructions, verdict and judgment of the court." *Colson*, 220 So. 2d at 347 n.1. In the present case, we are in a position to find that Densmore was denied a fair and adequate opportunity to prepare for trial, and a post-trial motion reasserting this error would not have developed the record further. Therefore, Densmore was not required to reassert this issue in a motion for new trial.

¶20. Given our clear precedent on such matters, the trial court erred by refusing to grant a continuance when the State did not disclose the identity of its star witness until the morning of trial. Densmore's conviction is reversed and the case is remanded for a new trial.

¶21. **REVERSED AND REMANDED.**

**WALLER, C.J, GRAVES, P.J., DICKINSON, AND CHANDLER, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLSON, P.J., RANDOLPH AND LAMAR, JJ.**

**PIERCE, JUSTICE, DISSENTING:**

¶22. I write separately in dissent because I do not think that the defendant is entitled to a new trial. Uniform Circuit and County Court Rule 9.04 governs what is required to be produced during discovery and regulates the procedure for dealing with discovery violations. The rule states in pertinent part that:

> [T]he prosecution must disclose to each defendant or to defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph *upon written request* and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
>
>> Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the

9

contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness. . . .;

Miss. Unif. Cir. & Cty. R. 9.04(A)(1) (emphasis added). The rule also spells out specifically what must be done when a confidential informant (CI) is part of the prosecution's case. The rule reads:

Disclosure of an informant's identity shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.

Miss. Unif. Cir. & Cty. R. 9.04(B)(2). The rule requires that disclosure must be made when the CI is an eyewitness to the events giving rise to the prosecution, as was the case here. *Id.* The rule also requires a written request be made in order to trigger the State's requirement to provide discovery. Miss. Unif. Cir. & Cty. R. 9.04(A)(1). The record in the case *sub judice* reveals no such request was ever made until the morning of the trial.

¶23. Rule 9.04 and its predecessor, Rule 4.06, maintain that a written request is required to trigger the prosecution's duty to provide discovery. Miss. Unif. Cir. & Cty. R. 9.04; *Swinford v. State*, 653 So. 2d 912 (Miss. 1995); *Moore v. State*, 536 So. 2d 909 (Miss. 1988). However, "where the state volunteers discovery in the absence of a discovery order or written request, it may not then withhold discovery it would otherwise be obligated to disclose." *Moore*, 536 So. 2d at 911. In *Stewart v. State*, 512 So. 2d 889, 892 (Miss. 1987), we reversed a conviction because the State withheld discovery until the day before trial, and

10

we stated, "Discovery, to be sufficient, must be made at a time far enough in advance of trial to give the defense a 'meaningful opportunity' to make use of it." *Stewart*, 512 So. 2d at 892. *See also Turner v. State*, 501 So. 2d 350 (Miss. 1987); *Gray v. State*, 487 So. 2d 1304 (Miss. 1986); *Henry v. State*, 484 So. 2d 1012 (Miss. 1986); *McKinney v. State*, 482 So. 2d 1129 (Miss. 1986).

¶24.    Rule 9.04 and other discovery guidelines were designed to avoid ambush or unfair surprise to either party at trial. *Holland v. State,* 587 So. 2d 848, 866-67 (Miss. 1991). Where the State is tardy in furnishing discovery which it was obligated to disclose, the defendant is entitled upon request to a continuance of the proceedings reasonable under the circumstances. *Foster*, 484 So. 2d 1009, 1011 (Miss. 1986) (citing *Henry v. State,* 484 So. 2d 1012, 1014 (Miss. 1986); *McKinney v. State,* 482 So. 2d 1129, 1131 (Miss. 1986); *Cabello v. State,* 471 So. 2d 332, 343 (Miss. 1985), *cert. denied* 476 U.S. 1164, 106 S.Ct. 2291, 90 L. Ed. 2d 732 (1986); *Box,* 437 So. 2d at 26 (Robertson, J., concurring)). Despite all of this, a defendant still should show that the lack of discovery prejudiced him or worked to his detriment. *Hunt v. State*, 687 So. 2d 1154, 1164 (Miss. 1996).

¶25.    Despite the clarity of these rules, there may still be discovery violations because the prosecution fails to reveal the identity of a confidential informant. Rule 9.04 applies to situations such as this and requires that:

> If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of

11

material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

Miss. Unif. Cir. & Cty. R. 9.04(I)

¶26.    This Court has held that "an accused's remedy for tardy disclosure of that to which he is entitled in pre-trial discovery is a continuance that is reasonable under the circumstances." *Dowbak v. State*, 666 So. 2d 1377, 1385 (Miss. 1996) (citing *Middlebrook v. State*, 555 So. 2d 1009 (Miss. 1990)); *Moore v. State*, 536 So. 2d 909, 911 (Miss. 1988). We have previously noted that the timing of a continuance may vary, as it does not have to be to the next term of the court, but may be only a matter of hours or even minutes. *Foster v. State*, 484 So. 2d 1009 (Miss. 1986). The length of the continuance is governed by what is reasonable under the circumstances. *Id*. This rule was developed in a case involving the failure to disclose a confidential informant. *See id.*

¶27.    Based on the rules as set out above, in the case *sub judice*, the State would not have been required to disclose any discovery, as no written request was received until the morning of the trial. Miss. Unif. Cir. & Cty. R. 9.04(A). However, consistent with the holding in *Moore*, since the State volunteered discovery, it was then bound to produce the remainder of evidence that was discoverable, and the failure to do so was a discovery violation. *Moore*, 536 So. 2d at 911. While I agree with the holding in *Moore*, it is distinguishable from the facts in this case. The argument in that matter centered around the disclosure of a confession taken by a police officer and logged in his report. *Id*. The State then produced discovery,

12

which included a statement that the State had no recorded statements by the defendant to any law enforcement officers. *Id*. The State thereafter supplemented discovery, and again failed to note the existence of a specific inculpatory statement. *Id*. Finally, shortly before the jury was selected, the State produced this statement. *Id*. The judge then denied the motion for a continuance, and this Court held that there was a discovery violation, and the denial of the continuance was reversible error. *Id*. This Court reiterated in *Moore* that this sort of trial by ambush or surprise is exactly what the rules of discovery were designed to prevent. *Id.*

¶28.   In this case, the State provided discovery on January 4, 2008. A continuance was granted, changing the date of the trial from February 4, 2008, to March 19, 2008. Plea negotiations were ongoing throughout this period and culminated with the defendant rejecting the State's final offers on the morning of the trial. Counsel for the defendant then presented the State with a letter requesting the identity of the informant *for the first time*. The defendant made no other request for discovery nor did he attempt to find the identity of the CI until the morning of the trial. The defendant had known since he received the indictment, that the State had alleged Densmore had sold illegal drugs to a confidential informant, yet he never requested the identity of the CI until the morning of the trial. While I reiterate the holding in *Moore*, I also believe that a defendant should not simply sit back and wait for the State to provide him with all discovery and then claim error when it does not follow through.[4]

---

[4] The famous dissent of Justice Hawkins characterizes the view of the majority in this matter well. "So let me be quite plain what this Court is saying to defense counsel in these . . . cases. It does not matter how experienced a trial lawyer you are, you can sit in the trial and remain totally silent when an error is committed. You need not then object. Furthermore,

13

¶29. A defendant has an affirmative duty to request discovery even if it is nothing more than a one-sentence request to the State. Miss. Unif. Cir. & Cty. R. 9.04(A). Similarly, the State also has a duty to follow the rules of discovery. It is inconsistent with the rules for the prosecution to maintain a policy that it will not disclose the identity of a confidential informant before plea negotiations end. While I believe this policy is held in good faith and not done to prejudice a defendant, Rule 9.04 does not leave this area open for interpretation, as it states conclusively that the identity of a CI must be disclosed if he/she is an eyewitness to the alleged crime. Miss. Unif. Cir & Cty. R. 9.04(B)(2). Nonetheless, counsel for the defendant was aware of the existence of a CI, as he was in possession of the video showing the alleged drug transaction, and the indictment stated the transaction took place using an informant. Therefore, this defendant could not have been surprised by the testimony of the CI, as was the case in *Moore,* where a confession was withheld. *Moore*, 536 So. 2d at 911.

¶30. As for the granting of the continuance, there is no shortage of cases which involve the failure to disclose the identity of a confidential informant. However, prior cases have not presented a situation such as this, where a short continuance was granted in order to review facts and information about the CI. As previously stated, I believe that defense counsel may not sit back and wait to be endowed with all the discovery available to the State. In this case,

---

when you have gone home, had time to study and reflect away from the heat of battle, and thereafter meticulously prepare the reasons to the circuit judge why you believe an error was committed during trial, you still need not raise the question before the trial court. You may supinely relax with the assurance that this Court will nevertheless take care of your client on appeal." *Griffin v. State*, 557 So. 2d 542, 554 (Miss. 1990) (Hawkins, P.J., dissenting).

14

the trial court did grant a continuance, but did not rule on the record concerning whether there was a violation. Nonetheless, in this case, any discovery violation was cured by a continuance reasonable under the circumstances.

¶31.   This Court continually has noted that there are circumstances in which a continuance need be for only a matter of hours or minutes. *Foster*, 484 So. 2d at 1011. This rule was announced in *Foster v. State*, in which this Court discussed the failure to disclose the identity of a CI. *Id.*   While the trial court did not originally grant a continuance in that matter, this rule was nonetheless developed, signaling the Court's willingness to accept a short continuance where the identity of a CI was involved. *Id*.   In this case, the trial court did grant a continuance for approximately three and a half hours so the defense could run a National Crime Information Center check on the CI. Furthermore, the testimony of the CI was not heard until the second day of trial, which allowed the defendant to further develop his defense. The NCIC check was important in allowing the defense to view the criminal record of the CI so that defense counsel could properly cross-examine and attempt to impeach his testimony. The defense was given adequate time and properly brought forth the many prior criminal convictions of the CI and also his motive for being a CI.

¶32.   The facts here show that the defendant had a copy of the video of the confidential informant procuring the illegal drugs from the defendant. It is apparent from this video what the substance of the testimony coming from the CI would be. The defendant also had the benefit of the actual indictment, which noted that the drug transaction took place with a CI.

15

It was quite evident what the substance of the testimony from the CI would concern. This Court has held that, where it is obvious what a witness is going to testify, there is no unfair surprise or trial by ambush. *See Lewis v. State*, 725 So. 2d 183, 187 (Miss. 1998); *Brown v. State*, 690 So. 2d 276, 290 (Miss. 1996). It cannot be said that the defendant would be surprised by what the CI would testify, since there was clear visual evidence showing what had occurred. While the audio is unavailable, this is of little consequence, as the video fairly depicted the illegal transaction.

¶33.    With all of this said, the defendant cannot simply sit back and wait for errors to be made and then complain later when he fails to take proper steps to prevent those errors. Had the defendant timely requested disclosure of the identity of the CI, and that request was denied until the day of trial, I would concur with the majority. Nonetheless, the defendant has not shown that a lack of discovery worked to his detriment or prejudiced him. *Hunt*, 687 So. 2d at 1164. Moreover, Mississippi Rule of Evidence 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Miss. R. Evid. 103(a).   Densmore has not demonstrated that previously-undisclosed evidence introduced at trial took him by surprise, prejudiced him, or affected one of his substantial rights. *Hunt*, 687 So. 2d at 1164. Therefore, his arguments on this point are without merit.

**CARLSON, P.J., RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**

16