KITCHENS, Justice,
for the Court.
¶ 1. Following a jury trial, Relious Dens-more was found guilty of one count of sale of cocaine and was sentenced to serve thirty years as an habitual offender pursuant to Mississippi Code Section 99-19-81 (Rev.2007). Finding that the State fell short of its duty to disclose evidence, we reverse the conviction and remand for a new trial.

Facts

¶ 2. The State’s main witness was Cecil Spraggins, who worked as a confidential informant for the Meridian Police Department and the Lauderdale County Sheriffs Department (East Mississippi Drug Task Force). On August 15, 2007, Spraggins agreed to try to purchase drugs from a certain woman, under the supervision of four task force agents. According to the agents’ testimony, Spraggins was given seventy dollars to buy drugs from the woman. The agents searched Spraggins and his vehicle before he attempted the undercover buy, and they concealed audio and video surveillance equipment on his person.
¶ 3. With the investigating agents following, Spraggins drove to the suspect’s home. Spraggins testified that, upon entering the residence, he was greeted by a white male and was told that the female suspect was in the shower. Spraggins also testified that a black male, later identified *381 as Densmore, came from the back of the home. According to Spraggins, Spraggins asked Densmore, whether he, Densmore, had the “sixty.” Densmore responded, “[y]es, sir, I do.” Spraggins testified that he bought sixty dollars’ worth of cocaine from Densmore and exited the home with this contraband.
¶4. Spraggins drove back to the task force headquarters to hand over the cocaine he had purchased. Once again, the agents searched his person and vehicle. A field test indicated that the purchased substance was cocaine. Later testing at the Mississippi Crime Laboratory revealed that the substance contained 0.7 grams of cocaine base.
¶5. Upon viewing the video recording, the agents discovered that no sound had been recorded during the transaction. The agents, however, had been able to maintain contemporaneous audio surveillance in their cars during the drug buy. Although the recording was inaudible, the video images were clear, and the agents recognized Densmore as the black male who had made the sale. The agents then showed Spraggins a photographic lineup, and Spraggins identified Densmore’s photograph as that of the person who had sold him the cocaine. While the video showed Densmore pulling the substance out of his pocket, it did not show a money-drug transfer. Because the surveillance equipment was attached to Spraggins’s person, he is not shown in the video.
¶ 6. On January 4, 2008, Densmore entered a plea of not guilty. Although the record does not indicate whether there was a written discovery request, on January 9, 2008, the defense received discovery information and material from the State. Trial was set for February 4, 2008, but a continuance was granted, and the trial was reset for March 19, 2008. It is not clear from the record who, if anyone, moved to continue the trial.
¶ 7. The morning of trial, Densmore announced that he would not accept the State’s plea bargain offers and instead would go to trial. That day, prior to commencement of the trial, the State informed the defense of the confidential informant’s identity and the existence of a taped confession, neither of which had been included in the discovery material. According to the prosecutor, the State withheld Sprag-gins’s identity until the morning of trial because it was his office’s “policy not to reveal the name of the confidential informant until plea negotiations were concluded and it was certain the case was going to trial.”
¶ 8. During the pretrial motion hearing on the day of trial, Densmore moved for a continuance in order to obtain private counsel in place of his court-appointed attorney. In the alternative, he requested that a continuance be granted in light of the newly-disclosed identity of the confidential informant, Spraggins, and the taped confession.
¶ 9. The trial judge ruled that the taped confession could not be used as evidence in Densmore’s trial. He also granted a brief continuance, lasting approximately three and a half hours, to allow the defense an opportunity to view the taped confession and to obtain information about Spraggins from the National Crime Information Center (NCIC).[1] After seeing and hearing the confession tape, the defense filed a written motion for a continuance based on the newly-revealed evidence, but the trial *382 judge overruled the motion as “not meritorious.”

Discussion

¶ 10. Densmore contends that the eleventh-hour disclosure of the State’s confidential informant was manifestly unjust and prejudicial, and that the trial court erred in refusing to grant his motion for a continuance.
¶ 11. “The purpose of pre-trial discovery is to avoid ambush or unfair surprise to either party at trial.” Blanton v. State, 727 So.2d 748, 752 (Miss.App.1998) (citing Frierson v. State, 606 So.2d 604, 607 (Miss.1992)). Rule 9.04(A)(1) of the Uniform Circuit and County Court Rules provides that the prosecution shall disclose the names and addresses of all witnesses in chief, proposed to be offered by the prosecution at trial. Miss. Unif. Cir. & Cty. R. 9.04(A)(1). Rule 9.04(B)(2) provides that the “the informant’s identity must be disclosed if a failure to disclose would infringe upon the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.” Miss. Unif. Cir. & Cty. R. 9.04(B)(2).
¶ 12. In the case at bar, Spraggins was the State’s main witness and the only eyewitness to the events giving rise to the charge against Densmore. In accordance with Rules 9.04(A)(1) and 9.04(B)(2), the prosecution was required to disclose Spraggins’s name and address to Dens-more prior to the day of trial.[2]
¶ 13. In Box v. State, 437 So.2d 19 (Miss.1983), the defendant was charged with armed robbery, and the State did not disclose the identity of the owner of the automobile allegedly used to perpetrate the robbery, a crucial witness, until the evening before the trial began. Id. at 20. This material witness was allowed to testify at trial, over the defense’s timely objection, depriving the defense of adequate time to prepare for trial. Id. at 21. This Court held that reversal was required, reasoning that justice is better served when the accused knows “reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof which, of course, includes the names of persons the State expects to call as witnesses.” Id.
¶ 14. Similar to Box, the State in the present case did not divulge the identity of the confidential informant, Spraggins, until the day of trial. Although the defense timely asked for a continuance, the trial proceeded in short order, and Spraggins was allowed to testify. The criminal discovery rules of this state were not enforced, and as the Box opinion recognized, “[a] rule which is not enforced is no rule.” Box, 437 So.2d at 21.
¶ 15. We recently reaffirmed our adherence to the rule announced in Box. In Fulks v. State, 18 So.3d 803 (Miss.2009), a unanimous decision, this Court reversed a conviction of armed robbery where the State waited until the day before trial to *383 inform the defense that a key witness had changed his story to implicate the defendant. The Court reiterated the reasons behind the need for a continuance in light of last-minute disclosures of material evidence:
When a prosecutor reveals evidence on the eve of trial that should have been disclosed earlier, and when that evidence completely undercuts the defense’s theory of the case and renders most of its trial preparations worthless, then the only effective remedy is a continuance. Otherwise, the defense attorney is left with inadequate time and opportunity to investigate the newly arisen evidence, evaluate its trustworthiness, discuss its implications with his client, allow time for due consideration thereof, and, if necessary, to develop a new trial strategy-
id at 10.
¶ 16. In some cases, a Box violation may require only a brief continuance. Id. at n. 3. (citing Reuben v. State, 517 So.2d 1383, 1386 (Miss.1987)). In the ease sub judice, the trial judge did grant a brief recess to allow Densmore to examine information about Spraggins from the NCIC report. However, “merely giving defense counsel a recess within which he may interview the newly-found witness or examine the newly-discovered document is not sufficient to prevent prejudice to the defendant.” Box, 437 So.2d at 24 (Robertson, J., concurring) (emphasis in original). As Justice Robertson explained in his concurring opinion, “there may be a dozen other ways to impeach or discredit the witness, if counsel only had time to develop and pursue his leads.” Id. In this case, Densmore’s attorney should have been granted time to pursue all avenues of impeachment, not just the NCIC report.[3]
¶ 17. Finally, the State argues that Densmore has failed to preserve the denial of a continuance for appellate review because he did not reassert the issue in his motion for a new trial. Generally, the failure to grant a continuance must be included in a motion for a new trial to preserve the issue for appellate review. Shelton v. State, 853 So.2d 1171, 1182 (Miss.2003) (citing Crawford v. State, 787 So.2d 1236, 1242 (Miss.2001)). However, in examining the reasoning behind the rule, we conclude that in cases where the motion for a continuance is based upon a last-minute disclosure of a key piece of evidence, the defendant is not required to *384 reassert the error in a motion for new trial.
¶ 18. The purpose of the rule is (1) to “assure an adequate record for considering the issue” and (2) “to give the trial judge, who is so much closer to the scene than we, every opportunity to act prior to the expensive and time-consuming process of appellate review.” Gowdy v. State, 592 So.2d 29, 33 (Miss.1991). See also Colson v. Sims, 220 So.2d 345, 347 n. 1 (Miss.1969). Such reasoning makes sense in light of the statute which governed continuances prior to the adoption of Mississippi’s Uniform Rules of Circuit and County Court Practice, as that statute only contemplated continuances because of an absent witness or a missing document. Miss. Code Ann. § 99-15-29 (Rev.2007). In such instances, the trial judge could not properly pass on the issue without receiving evidence of the witness’s testimony or the contents of the documents, and a post-trial motion was necessary to ensure an adequate record. See King v. State, 251 Miss. 161, 171-172, 168 So.2d 637, 641 (1964); Lamar v. State, 63 Miss. 265 (1885).
¶ 19. Yet, in cases involving last-minute disclosure of witnesses, a post-trial motion does nothing to further these goals, because the trial judge has already ruled on the issue, and the error is clear from the record. As this Court has clearly recognized, “it is not necessary to make a motion for a new trial grounded upon errors shown in the official transcript of the record, including the pleadings, transcribed evidence, instructions, verdict and judgment of the court.” Colson, 220 So.2d at 347 n. 1. In the present case, we are in a position to find that Densmore was denied a fair and adequate opportunity to prepare for trial, and a post-trial motion reasserting this error would not have developed the record further. Therefore, Densmore was not required to reassert this issue in a motion for new trial.
¶ 20. Given our clear precedent on such matters, the trial court erred by refusing to grant a continuance when the State did not disclose the identity of its star witness until the morning of trial. Densmore’s conviction is reversed and the case is remanded for a new trial.
¶ 21. REVERSED AND REMANDED.
WALLER, C.J., GRAVES, P.J., DICKINSON, AND CHANDLER, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLSON, P.J., RANDOLPH AND LAMAR, JJ.

. The NCIC is a criminal records database available to law enforcement and prosecutorial authorities, but not to the public.

. According to the prosecutor, the State withheld Spraggins's identity until the morning of trial because "it was a policy of our office not to reveal the name of a confidential informant until plea negotiations were concluded and it was certain the case was going to trial.” Rule 9.04(B) provides in pertinent part that the "court may limit or deny disclosure authorized by subsection ‘A’ if it finds that there is substantial risk to any person of physical harm, intimidation, bribery ... etc.” Miss. Unif. Cir. & Cty. R. 9.04(B). However, the State did not make any argument in reliance on this provision, and the trial court made no such finding. The language in Rule 9.04(B) does not mention plea negotiations as a limitation to the required disclosure of the names and addresses of witnesses whom the State expects to call at trial.

. The dissent argues that Densmore was not prejudiced because he was aware of the existence of a confidential informant and should have known the substance of this witness’s testimony based on the previously-disclosed videotape recording of the transaction. Yet, Densmore could not have predicted what Spraggins might say when the bulk of Sprag-gins’s testimony concerned events before and after the recording. This argument also ignores the defendant's need to gather impeachment evidence, which may not be related to the subject matter of the witness’s testimony.
The dissent would also place the burden to seek discovery upon the defendant once it has been volunteered by the State. This rationale was explicitly rejected in Moore v. State, 536 So.2d 909, 911 (Miss.1988), because it “would allow the prosecutor to volunteer discovery to defense counsel before defense counsel has filed a written request for discovery, and then withhold information that otherwise the state would be obligated to furnish under Rule [9.04], To countenance this result would be to countenance obvious circumvention of Rule [9.04]."
With respect to the dissent's assertion that Foster v. State, 484 So.2d 1009 (Miss.1986) "signaled] the Court’s willingness to accept a short continuance where the identity of a Cl was involved,” the opinion makes no such implication. Foster simply noted, without specific examples, that a short continuance may be acceptable under certain circumstances. Id. at 1011.